IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:20-cv-00198-WCM

| | |
|---|---|
| VICKIE RENEE CARPENTER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> COMMISSIONER OF THE SOCIAL ) <br> SECURITY ADMINISTRATION, ) <br> ) <br> Defendant. ) <br> _____ ) | MEMORANDUM OPINION <br> AND ORDER |

This matter is before the Court on the parties' cross motions for summary judgment (Docs. 12, 13).[1]

## I. Procedural Background

In August of 2017, Plaintiff Vickie Renee Carpenter ("Plaintiff") filed applications for disability insurance benefits and supplemental security income. Transcript of the Administrative Record ("AR") at 160-166; 174-183. Plaintiff alleges disability beginning January 23, 2017. AR 187; AR 60.

On September 19, 2019, following an administrative hearing at which Plaintiff appeared and testified, an Administrative Law Judge ("ALJ") issued

---

[1] The parties have consented to the disposition of this matter by a United States Magistrate Judge. Doc. 11.

1

an unfavorable decision. AR at 14-27. That decision is the Commissioner's final decision for purposes of this action.

## II. The ALJ's Decision

The ALJ found that Plaintiff had the severe impairments of "angina pectoris without ischemic heart disease and Charcot Marie tooth disease." AR at 19. After determining that Plaintiff's impairments did not meet or medically equal one of the listed impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC"):

> to perform light work . . . except the claimant can occasionally climb ladders; frequently climb stairs; frequently stoop, crouch, kneel, and crawl; and frequently perform fine and gross manipulations in the bilateral upper extremities. The claimant should avoid concentrated exposure to cold, humidity, pulmonary irritants, and hazards.

AR at 22.

Applying this RFC, the ALJ found that Plaintiff had the ability to perform certain jobs that exist in significant numbers in the national economy such that Plaintiff was not disabled during the relevant period. AR -26-27.

## III. Plaintiff's Allegations of Error

Plaintiff contends that the ALJ failed to weigh the opinions of Dr. Jacob Mills (AR 513-514), Dr. Michael Vavra (AR 509-511), and F.N.P. Jill Raymer ("NP Raymer") (AR 503-507) properly.

2

## IV. Standard of Review

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. The burden rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, the issue before the Court is not whether Plaintiff

is disabled but, rather, whether the Commissioner's decision that she is not disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

## V. Discussion

For applications filed on or after March 27, 2017, such as Plaintiff's, the Administration has "fundamentally changed how adjudicators assess opinion evidence." Bright v. Saul, 1:19CV504, 2020 WL 4483008, at *2 (M.D.N.C. Aug. 4, 2020) (citing 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017); 20 C.F.R. §404.1520c(a) (effective March 27, 2017)). Specifically, "longstanding requirements calling for adjudicators to weigh medical opinions and give special deference to treating source opinions have changed" and an ALJ is now required to "consider and articulate in the administrative decision how persuasive he or she finds each medical opinion…" Id.

"In evaluating persuasiveness, the ALJ must articulate two factors: supportability and consistency. Supportability is an internal check that references objective medical evidence and supporting explanations that come from the source itself. Consistency is an external check that references evidence from other medical and nonmedical sources." Id. (internal citations omitted).

4

Here, the ALJ applied this standard properly, and, as discussed below, substantial evidence supports the ALJ's treatment of the opinions of Dr. Mills, Dr. Vavra, and NP Raymer.[2]

### A. Dr. Mills

Dr. Mills opined that Plaintiff had marked restrictions in her activities of daily living, marked difficulties in maintaining social functioning, and deficiencies of concentration, persistence, or maintaining pace. AR 513.

The ALJ found Dr. Mills' opinion unpersuasive because it was inconsistent with Plaintiff's treatment record. AR 20. Specifically, the ALJ noted "very little mental health treatment other than medication management." AR 20 (citing AR 377-378 (Dr. Jan Pattanayak January 13, 2017 treatment note reflecting Plaintiff on sertraline for anxiety/depression and "dealing with it reasonably well" and that Plaintiff "does seem happy with

---

[2] As a threshold matter, while a conclusory, stand-alone "check box" form is not favored, a form may constitute some evidence of a claimant's functional limitations if it is appropriately supported by other evidence in the record. See Lawson v. Colvin, 21 F.Supp.3d 606, 614 (W.D. Va. 2014) (where physician's opinion, set forth in a "fill-in-the-blank" form, was supported by physician's own examination notes and years' worth of notes by other physicians in his practice, as well as the results of a separate nerve conduction study, opinion should have been given controlling weight); Williams v. Colvin, No. 1:14cv18-MOC-DLH, 2015 WL 1000321, at *7 (W.D.N.C. March 6, 2015) ("A conclusory checkbox form like the application filled out by Dr. Rosenburg is entitled to little, if any, weight"); Thomas v. Berryhill, No. 4:16cv15-D, 2017 WL 1047253, at *7 (E.D.N.C. Feb. 15, 2017) (check box or fill in the blank forms are weak evidence unless supported by medical records).

5

life"), AR 493 (Dr. Vavra March 7, 2019 treatment note reflecting normal mental status exam)).

Additionally, the ALJ cited Plaintiff's testimony that she performs household chores, spends time with her family, goes to church on a weekly basis, and has family and friends visit her, see AR 46, and treatment notes showing Plaintiff's memory was intact, and that she was cheerful and cooperative during medical exams. AR 21 (citing AR 377, AR 406 (January 19, 2017 treatment note reflecting Plaintiff was "cheerful"), AR 432 (April 16, 2018 visit with NP Raymer during which Plaintiff was noted as "cheerful and conversant with appropriate discussions and thought process"), AR 449 (May 24, 2018 appointment with NP Raymer reflecting that Plaintiff "cheerful and conversant")).[3]

### B. Dr. Vavra

Dr. Vavra provided an opinion that Plaintiff experienced frequent dizziness, with associated symptoms (including exhaustion) and mental

---

[3] It appears that Plaintiff saw Dr. Mills on October 22, 2018 and November 21, 2018. AR 476-482 & AR 468-474. Plaintiff points out that in both treatment records, Dr. Mills states that Plaintiff's physical exam revealed "numbness and weakness profoundly affecting patients [sic] quality of life both UE and LE." These same treatment records, however, also reflect that Plaintiff had a normal gait, 5/5 strength generally, was cooperative and exhibited appropriate affect. Plaintiff argues that Dr. Mills' opinion is further supported by a nerve conduction velocity ("NCV") and electromyography ("EMG") test conducted on November 12, 2018. AR 461-464. The impression of the reviewing physician, however, indicated that the findings were consistent with Plaintiff's previous diagnosis of Charcot Marie tooth disease. AR 462.

6

Case 1:20-cv-00198-WCM   Document 15   Filed 10/06/21   Page 6 of 11

problems, which interrupted Plaintiff's "ability to accomplish all activities of daily living" and precluded Plaintiff from standing for more than 15 minutes. AR 509-510. He further opined that Plaintiff was unable to operate a motor vehicle and would miss more than four days of work per month due to her symptoms. AR 510.

The ALJ found Dr. Vavra's opinion unpersuasive because it was provided using a "check box style form, which provides for a more suggestive response without providing the objective support for such a response" and because certain of Dr. Vavra's opinions were inconsistent with Plaintiff's own testimony.[4]

Additionally, the ALJ explained that Dr. Vavra provided insufficient reasoning for his opinion that Plaintiff would miss four days of work per month, and that his opinion was "inconsistent with the evidence of record including treatment notes that show that the claimant's pain is at times controlled with medication and normal physical exam findings." AR 25 (citing AR 424-425 (September 22, 2017 visit with NP Raymer reflecting normal gait, 5/5 strength, and full range of motion), AR 432-433 ("chronic pain patient well controlled will try meloxicam"), AR 449-450 (May 24, 2018 treatment note indicating complaints of pain and arm numbness), AR 451-453 (June 28, 2018 treatment

---

[4] In particular, while Dr. Vavra indicated that Plaintiff could not operate a motor vehicle, see AR 510, Plaintiff testified that she could drive.

7

note reflecting normal gait, no dizziness with rising, decreased sensation and strength in upper extremities); see also AR 22 (citing AR 494 (Dr. Vavra March 7, 2019 treatment note reflecting normal bulk and tone and 5/5 strength throughout except 4+/5 dorsiflexion in left and right ankle)); AR 23 (citing AR 469 (Dr. Mills November 21, 2018 treatment note showing that although Plaintiff complained of ongoing pain, she rated the pain at 5 out of 10)); AR 23-24 (citing AR 487) (February 2019 treatment note reflecting that Plaintiff was doing well and was encouraged to exercise)).[5]

### C. NP Raymer

NP Raymer provided an opinion that Plaintiff had pain that frequently interfered with her attention and concentration, numbness bilaterally in her arms and legs, and severe limitations in her ability to deal with stress. NP Raymer additionally opined that Plaintiff could sit or stand/walk for a very limited amount of time, would need to shift positions often and elevate her leg(s) most of the time, needed a cane or other assistive device, could only

---

[5] It appears that Plaintiff saw Dr. Vavra once, on March 7, 2019. AR 491-500. During that visit, Plaintiff self-reported weakness, dizziness, and balance issues, as well as pain in her back, neck, and arms. AR 493. On exam, Plaintiff was noted as oriented, with appropriate mood and affect, with an adequate fund of knowledge, and intact recent and remote memory. Additionally, Plaintiff exhibited normal bulk and tone, 5/5 strength generally (with the exception of her right and left ankle), and decreased sensation and reflexes. AR 494.

occasionally lift and carry less than ten pounds, and could not perform any repetitive activities with her hands, fingers, or arms. AR 505-506.

The ALJ found that NP Raymer's opinion was not persuasive because it was "not supported by her treatment notes and [was] not consistent with the evidence of record" including, specifically, Plaintiff's testimony that she was able to drive and prepare meals, and treatment notes generally reflecting Plaintiff's full strength. AR 24 (citing AR 424 (September 22, 2017 visit with NP Raymer reflecting normal gait, 5/5 strength, and full range of motion), AR 449 (NP Raymer May 24, 2018 treatment note), AR 471 (Dr. Mills November 21, 2018 treatment note reflecting "5/5 throughout bilateral upper and lower extremities except 4+ R hard intrinsics, L wrist extension and L planta dorsiflexion")).[6]

### D. Other Opinion Evidence

Finally, Plaintiff argues that after rejecting the opinions of all of Plaintiff's treating providers, the ALJ improperly relied on the opinions of the state agency consultants, Dr. Robert Pyle and Dr. Morris Susman.[7]

---

[6] Plaintiff saw NP Raymer multiple times. While these records reflect that Plaintiff complained of more pain beginning in May of 2018, along with numbness, she also exhibited a normal gait, with normal grip on August 24, 2018 and 4/5 grip strength in September 2018. AR 449-457.

[7] Both Dr. Pyle and Dr. Susman concluded Plaintiff had no manipulative limitations. AR 75 & 88. Dr. Pyle additionally found that Plaintiff had no postural limitations, while Dr. Susman concluded that Plaintiff had some limitations in her ability to climb

9

The ALJ considered the opinions of Dr. Pyle and Dr. Susman "somewhat persuasive," see AR 24-25, but concluded that Plaintiff had greater postural and manipulative limitations based on a November 2018 nerve conduction study and treatment notes showing Plaintiff had decreased strength in her wrist. AR 24 (citing AR 461-464 (November 2018 EMG/NCV testing) & AR 471 (Dr. Mills November 21, 2018 treatment note)).

Contrary to Plaintiff's argument, it does not appear that the ALJ improperly "played doctor by interpreting the NCV and EMG test results into functional limitations." Doc. 12-1 at 25. Instead, it appears that the ALJ viewed that testing as being consistent with the limitations reflected in Plaintiff's November 21, 2018 exam. See AR 472 (noting, with respect to the EMG/NCV "[t]his is most likely causing the severe numbness and tingling in digits 1 through 4 both hands").

In sum, the ALJ did not err in evaluating the opinion evidence.

---

ramps/stairs, climb ladders/ropes/scaffolds, stoop, crouch, kneel, and crawl. Plaintiff's RFC reflects the postural limitations set forth by Dr. Susman.

## VI. Conclusion

For the reasons stated above, Plaintiff's Motion for Summary Judgment (Doc. 12) is **DENIED**, and the Commissioner's Motion for Summary Judgment (Doc. 13) is **GRANTED**.

Signed: October 6, 2021

W. Carleton Metcalf
United States Magistrate Judge